Good morning. My name is John Wilson. I'm from the law firm of Noble & Associates. We represent Harrah's Casino in this case. It's our opinion that the commission decided this case against the manifest weight of the evidence, and therefore this case should be reversed. We also believe that Ms. McElroy failed to prove a causal evidence. In this case, McElroy did have an accident on 11-21-06. She was injured in that incident, and she was off work. She was off work for approximately 16 days in November and December of 2001, and 16 days of TPD benefits were paid to her. She received medical treatment in this case for her left knee from November 26, 2001 to June 20, 2002. This medical treatment was provided by Dr. Daley, who diagnosed her with a left knee sprain. This is seen in a couple of his letters to a doctor at MedWorks, and also is seen, I believe, on all of his work status reports that are returned back to the company. There's no question that the claimant suffered a slip and fall injury on 11-26-01, is there? No, sir. No. Actually, in this case, there's one overriding question, and the question is of causal connection in this case. And that is, she was returned to work sometime in February 26, 2002. She was declared MMI, I believe, sometime in May of 2002 by her treating physician, Dr. Daley. And she was discharged from care on June 20, 2002, by Dr. Daley, who basically found her to be in good condition, doing fairly well. There was some preparation, but no significant discomfort, and she was supposed to return if she had any discomfort. She didn't. She returned, however, two years later with some intervening factors. And those intervening factors were that she had started working at Panera Bread and had different duties than she had at Harrah's, and she was also walking. She had increased walking due to her diabetes. She was trying to control that with exercise. And those two factors were the causative factors in her reporting to the new Dr. Durkin, who had apparently taken over from Dr. Daley. So what's the essence of your being troubled with the commission? There was clearly a slip and fall injury. As we know, recovery can be had if the claimant proves some act or phase of the employment was a causative factor, even if it's not the sole or principal cause of the later injury. She was MMI in this case in May of 2002 and June of 2002. She was discharged from care. She didn't have any treatment for over two years. Not only that, but she was treating with a Dr. Ira Goodwin, a pain specialist. She was treating for her back. It goes back and forth between back and right buttocks and right thigh. But she treated with him about 12 times. She got three steroidal epidural injections during that time for her back. She made no complaints of pain during that time. I mean, here she's at a pain doctor. No complaints of pain in the left knee. She saw Dr. Lorenz at Hinsdale Orthopedics. She treated with him two or three times in 2003. No complaints of left knee pain. So it's clear that when Dr. Durkin says that I would expect she had knee pain, I would expect this, I would expect that during that intervening time. It just didn't happen. That's not true. His speculation and conjecture, which was relied upon by the commission, just isn't borne out by the facts in this case. He opined the causal connection back to the date of the injury. And what evidence is there contrary to that? Well, the history and the medical facts that she had no treatment during that time. And I guess at her first hearing on this case, she was asked, now going back to the original question I asked you, the job change that caused the increase in your knee problems, was that because of your work at Panera Bread? Not totally. Because I had walked. I'm a diabetic. My doctor told me to start walking more, move around more, and overtime it. You know, my knees started hurting. So it's not just the job, it's also walking. From walking from your diabetes? Yeah. That's when you notice the increase in knee pain. That's right. Is that why you went to see Dr. Durkin? Yes. I saw him because, you know, something I wanted to change because I had to stop. I had to stop walking for my diabetes. There was no connection, excuse me, there was no connection in this case, no causal connection between the reasons why she had this increase in pain or a reoccurrence of pain in 2004 and her job duties and injury from Harrah's Casino. She was done with that. She was done treating. She had reached MMI. And as we had stated in our brief, if this had been a carpal tunnel situation where a secretary had gone out and had carpal tunnel, had the surgery, had the operation, and then switched to a new job in the same company and then had to type 50% more, four hours instead of two, you know two years later that this would have been a causative relationship between the new carpal tunnel and the old one. It would have been a new case. Not an old one, but a new one. And that's the same situation we have here. There's not a new injury or there's not an injury arising that occurred from her injuries at Harrah's. She tells us, and this is after, I believe this is after Dr. Durkin's deposition was taken, but she tells it quite clearly. The reason why I needed to go see Dr. Durkin was not only my new job duties at Panera, but also I had increased my walking so I could control my diabetes. Those are the two reasons she gave. She did not say my knee kept on hurting from Harrah's. It never recovered. I saw three other doctors in the meantime. None of that happened. None of that occurred. There's no factual connection to give a causal connection opinion that Dr. Durkin did get one, but there's no factual basis for him to do that. And if you look at what he said on a factual basis, doesn't he go into a medical basis? He testified that a slip and fall accident at work in 2001 was the cause of her left knee symptoms. She arised for the need of surgery. He says when you dislocate your kneecap, you tear it. It comes back in. Sometimes it heals up adequately and sometimes it won't. And then with regard to the two-year period in which, as you say, she performed regular work with no medical treatment, Durkin specifically stated, people do recur from time to time with these scenarios, following inhibition of the muscle that holds the kneecap in place. So he's saying this is a normal, you know, he sees this medically speaking. It's not unusual for this to go on. That's right. But that's not what happened here. What happened here is that he goes on to say there's overuse in this case. And that's what he says. He was asked the question, is there some kind of precipitating event that would cause something like this? And he goes, by precipitating event, do you mean something grossly traumatic? Not necessarily. Because these kneecaps, it's not like she has to have a fracture. She just has to have overuse. So what he's told us, he goes, there are two scenarios that can impact her kneecap. One, sometimes it can just happen from it didn't fully recover, we don't know why, but it can just happen on its own without having a precipitating factor. There are other cases that have overuse, where something happens, the knee's stressed, she runs an extra mile, she picks up something too heavy, something that stresses out the knee and causes that overuse situation. That's what happened here. Is that what you argued before the commission, the overuse? Or what did you argue before? I don't think we argued overuse. I think that's what they argued, overuse, before the commission. I think we've argued no causal connection before the opinion throughout the entire time. Then why are you switching now to overuse? I'm not switching now to overuse. I'm just pointing out that Dr. Durkin's opinion is not based on any factual basis that he's given you. The overuse, one, because I don't think he knew what she was going to say, because you look at what he testified to. I didn't have the original emergency room records. I didn't really see the original MRI. I didn't really have, you know, I didn't know what the ER issues were. I didn't really read Dr. Daly's. I kind of glanced at it, but I didn't really see Dr. Daly's records. He doesn't present a solid factual basis for giving his opinion in this case. Well, let's assume that that argument has some appeal, but how do you get around the well-settled doctrine in these cases that it's the commissions, within the commission's province, to determine the credibility of the witnesses and the weight to be given to the testimony? How do you get around that? Because there still has to be a causal connection between her current state of ill-being and the accident back then. And Durkin doesn't provide that? Durkin does ostensibly provide it. You're questioning the basis, or I should say the foundation for his opinion and his knowledge, but he does provide that opinion. Yes, he does, but he provides two opinions. One, he says it can just happen. Like with the quote that you read, this can happen. Sometimes it can reoccur. Sometimes we don't know why it reoccurs. It just reoccurs out of the blue. The other opinion he gave, or the other statement he made, is that she doesn't have to have a fracture. She has to have overuse. And she admitted the overuse once she came to court and testified. And for the commission to ignore the fact that... The overuse being what? Her work at Panera's or her walking for diabetes control? She says both. I mean, I can't dispute that. You know, it looks like there was an increase in walking while she was at Panera's. But then she also says, no, not totally. She was asked, was it because of your work at Panera's? And she goes, no, not totally. Because I had walked, I'm diabetic, I had to start walking more, move around more, and over time, you know, my knees started hurting. So it's just not the job, it's also walking. Walking for your diabetes? Yes. And that's when you notice the increase in knee pain. That's right. She doesn't attribute this to her injury from HERA. She doesn't attribute this to her accident from HERA. She attributes her increase in knee pain and states quite clearly, the reason why I went to go see Dr. Durkin is because I had an increase in knee pain when I was walking and I was working overtime at Panera. I had to walk more and do more stuff at Panera. And that's why I had the increase in knee pain. She had plateaued. She was at MMI and had plateaued from her injury at HERA's in 2002 when she was released by Dr. Daly. She didn't see anybody for two years. When she had plateaued, what does that mean conceptually when you say she has plateaued? Does it mean that she's at MMI? She's at MMI. Okay, but MMI might not be 100% of the use of your knee. Well, that is correct. And we don't know from the record that's been presented whether she was back to her original state when Dr. Daly was done with her. It appears that she had a couple lingering complaints. She had some trepidation. He didn't think it was significant. She had some minor, she probably wasn't exactly 100% back to where she was before. And is that sufficient to diminish this idea that there's an intervening cause, which I think is what we're kind of looking at for overuse? I don't think that diminishes it at all. I think the intervening cause of two years and her pointing out two separate instances of things that caused her knee pain that are not related to any occurrence from HERA's, I think that breaks the chain of causal connection right there. Thank you. Your time is up, counsel. Counsel, please. Can I get to an interesting point here, at least from my perspective? Why doesn't that break it up there, as counsel just concluded? If we have her working at Panera, why isn't Panera bred the employer who should be paying for this as opposed to HERA's? And or why, if there's a thing called personal use of your legs and knees and walking, that that isn't even employment related? Right. I think what, if you look at the intervening cause case law, and I think I had to go back to civil court to find out, you know, whether we had a disruption of the approximate cause presentation by a plaintiff. We have to have an efficient intervening cause. It has to be the sole cause of the present condition and need for treatment. We have a person who's engaged in daily activities of simply walking, and as you can tell, she was pretty sedentary before she started walking a little more and moving around a little more when her pain started coming back or increasing. I don't know that that qualifies as an accident, intervening or not. And I don't think I could win the case on the Panera. In fact, I reviewed it when I brought the case in. I'm looking at it, Panera Bread, it's starting to hurt a little more. How can I make a case out of that? I just don't think it fits within the confines of the workers' comp law. So I was afraid I wouldn't be able to pin it on Panera, so we went back to where the, you know, the traumatic incident, oh, sure, the retinaculum was torn. By the time we have an atrophying of the vastus medialis, which keeps the patella tracking accurately, that all started with Hera's accident. And by the time she was released at MMI, you'll see there was an 80 percent improvement, I think, in the strength of the VMO, but that's a 20 percent deficit still. We still have some maltracking, and when she was released at MMI, there's no comment on how much she's still We come back two years later, we still have the maltracking patella, which started with this accident. So why were there no problems for two years? She's making the argument that everything seemed to be fine, she's at MMI, two years go by and all of a sudden there's problems. Right, yeah, I get the argument, and I don't know that there weren't problems during the intervening two years. We do know that she didn't have any treatment for two years for that. Was there anything in the record that would indicate she testified there were problems? I don't recall her testifying to it. I think we were focusing a little bit on the back and the pain treatment at that point. But, I mean, logically, we could conclude that the commission thought she's getting pain treatment, presumably including medication, that might mask some of the ongoing pain. And if she's able to live with it, she's had her therapy, they actually did improve her capacity for work, her ability to get around, so maybe she felt she should just live with it at that point. Then when she gets up and starts walking and doing daily activities, you know, she's not doing anything unusual. She's not running marathons, and the pain starts increasing again. Well, it's all pinning back on this, this maltracking patella, according to the doctor. That's why he causally relates it. They started the problem. She comes back for treatment specifically for that maltracking patella. And I think the commission and the arbitrator were exactly on point when they found the causation, despite the two-year absence. I don't understand. I would say that's true. I don't think we put in for any of that, because she did go off to other occupations. So I wasn't looking for TTD beyond the initial absence from work. I figure if there's going to be some TTD associated with the patellar retinaculum release, then I would ask that the arbitrator award that if I need to go back and ask for that. But I would think that if you uphold the commission decision, I don't think that should be an issue from even Herent. I have nothing else to say. I think the brief was pretty succinct, unless you have other questions. Thank you. Counsel has come up and told you she's returned to work and she was sedentary, she was this, she was that. That's not true. She returned to work on February 26, 2002. She returned to work full duty. She worked full duty while she was treating with Dr. Daley from February 26 until she ended her employment, or Harris ended her employment, I think it was February of 2004. She worked for two more years full duty. And you look at what she testified to, she didn't have a sedentary job. She was the supervisor of three different restaurant food providers at Harris Casino and Juliet. She walks between all three of those. She was walking to the kitchen, I believe, when she tripped on this water that was on the floor in the original accident. She didn't have a sedentary job. She was walking the entire time. None of this, all of this reflects on the fact that she did not have any intervening problems, intervening accident, intervening pain complaints when she worked at Harris. She was not getting treatment from that. She was not treating for her left knee. She was not treating for any condition that arose from this particular incident. She was done treating with this incident. The increase in walking apparently came when she started at both Panera with her overtime and then with her additional walking for her recreational or diabetic exercise. And counsel said her patella started tracking, this patella tracking thing started at Harris. And I would submit that it didn't. If you look in the records, she testified that she was in fifth grade. She had kind of a fall and she underwent some kind of physical therapy, electrical stimulation to that left knee and some physical therapy during that time. Although it wasn't really gone into, I would submit that you really don't, you know, kids don't need that kind of thing unless there's some kind of serious thing going on. And she did testify, I think, that she fell right on that kneecap or on that knee. So I would submit that we did not cause her patella, although that's not particularly relevant, I don't think, that we caused it, but they allude that we caused it. And I don't think we did. I think there are documents you have to deal with the claimant as you find them. I mean, she's working at Panera Bread. I haven't heard anything that says that she's engaging in some particularly strenuous physical activity. Diabetic, she has to walk. Why would that take it out of the arena? No, it doesn't. I was just pointing out that I don't think, I think when counsel asserts things, that counsel kind of asserts things that are slightly off-center in his arguments, I'm just saying that I don't think we caused her initial patella mistracking. And if you look at what Dr. Daly said and if you look at what Dr. Lorenz said, they didn't, when Dr. Durkin said that Dr. Lorenz did a much better thorough history and examination than he did, when Dr. Lorenz did his examination of her, I think in March of 2004, when Dr. Lorenz referred her to Dr. Durkin. There's no medical testimony in the record regarding this mistracking related back to the initial injury of the patella? I think the only one in there that says that is Dr. Durkin. And I think he admits that his foundation for doing that is basically flawed. He didn't take enough information. He doesn't have enough information. He didn't have any MRIs or x-rays. So I don't think he really thoroughly talked to her either. So I would ask that you reverse this and overturn this. Thank you. Thank you, counsel. Of course, we'll take the matter under advisement for disposition.